O

# United States District Court
# Central District of California

| | |
|---|---|
| DEMETRIA CORTES,<br>Plaintiff,<br>v.<br>CITY OF POMONA et al.,<br>Defendants. | Case № 2:26-cv-01499-ODW (CTSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [16]** |

## I. INTRODUCTION

Plaintiff Demetria Cortes brings this civil rights action against Defendant City of Pomona ("City") arising from her detention by Pomona Police Department ("PPD") officers following an altercation with a nonparty at a local gas station. (Compl., Dkt. No. 1.) The City now moves under Federal Rule of Civil Procedure ("Rule") 12(b) to dismiss Cortes's claims for violation of the Equal Protection Clause, municipal liability, violation of California's Bane Act, and violation the California's Ralph Act. (Mot. Dismiss ("Motion" or "Mot."), Dkt. No. 16.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the City's Motion.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

Cortes is an African American woman. (Compl. ¶ 7.) On June 15, 2024, she and her husband encountered nonparty Jessica Mejia trespassing on Cortes's property. (*Id.* ¶ 9.) Mejia previously trespassed on Cortes's property and defecated in her yard. (*Id.* ¶ 8.) After Cortes told Mejia to leave, Mejia began throwing objects at Cortes's vehicle, including a soda bottle that struck Cortes in the face. (*Id.* ¶¶ 10–11.) Cortes and her husband called 911, and Mejia fled to a nearby gas station. (*Id.* ¶¶ 12–13.) Cortes followed Mejia while remaining on the phone with the dispatcher. (*Id.* ¶ 14.)

At the gas station, Mejia threw a squeegee at Cortes's vehicle, broke the windshield, and picked up another squeegee. (*Id.* ¶ 15.) Cortes exited her vehicle to prevent further attacks. (*Id.* ¶ 16.) Mejia then brought Cortes to the ground, removed Cortes's dress, spat on Cortes, and used racial slurs against Cortes. (*Id.* ¶¶ 17–18.)

As Cortes got up from the ground, a Pomona Police Department ("PPD") officer arrived at the scene, punched Cortes in the face, slammed her to the ground, handcuffed her, and detained her. (*Id.* ¶¶ 19–20.) The officer did not detain Mejia. (*Id.* ¶ 21.) Despite witnesses telling the officer that Cortes was the victim, the officer detained Cortes for thirty minutes. (*Id.* ¶ 22.) Other officers then arrived at the scene. (*Id.* ¶ 23.) The PPD officers denied Cortes's requests to clothe herself and to adjust her handcuffs, which were causing her pain. (*Id.* ¶ 24.) The officers later released Cortes without arrest and arrested and charged Mejia with a felony. (*Id.* ¶¶ 25–26.)

Based on the above, on February 12, 2026, Cortes initiated this action against the City alleging claims for unreasonable seizure and excessive force under 42 U.S.C § 1983, violation of the Equal Protection Clause under § 1983, assault and battery, negligence, intentional infliction of emotional distress, municipal liability, violation of California's Bane Act, and violation of California's Ralph Act. (*Id.* ¶¶ 29–88.) The City now moves to dismiss pursuant to Rule 12(b)(6). (Mot.)

---

[2] All factual references derive from Cortes's Complaint or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation modified).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Therefore, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

The City moves to dismiss Cortes's Equal Protection, municipal liability, Bane Act, and Ralph Act claims pursuant to Rule 12(b)(6). (Mot.)

### A. Equal Protection Claim (Count 2)

Cortes alleges that PPD officers treated her differently from Mejia because she is Black. (Compl. ¶¶ 38–45.) As Cortes alleges that officers treated her differently because of her race, her Equal Protection claim is a claim for "selective enforcement." *Lacey v. Maricopa County*, 693 F.3d 896, 920 (9th Cir. 2012). The City argues that Cortes's Equal Protection claim fails because she does not allege either a discriminatory effect or a discriminatory purpose. (Mot. 5–7.)

To state a claim under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that "enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007). The discriminatory effect element requires a plaintiff to "show that similarly situated individuals . . . were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). A plaintiff satisfies this requirement if it can demonstrate that the defendant "treat[ed] differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). To establish discriminatory purpose, a plaintiff must show that the "defendant acted at least in part *because of* a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation modified).

Cortes adequately alleges discriminatory effect. She alleges that she was the victim of a physical assault by Mejia. (Compl. ¶¶ 15–18.) However, despite multiple eyewitnesses informing the responding PPD officer that Cortes was the victim, not the assailant, the officer violently punched Cortes in the face, slammed her to the ground, handcuffed her, and detained her for approximately thirty minutes, all while they did not detain Mejia. (*Id.* ¶¶ 19–22.) Although the City argues that Mejia is not an appropriate comparator because she is Hispanic, not White, (Mot. 6), this argument

misses the relevant comparison. Cortes does not allege discrimination between Black and White individuals generally; instead, she alleges that PPD officers treated Cortes, the alleged victim, and Mejia, the alleged assailant, differently during the same encounter. (Compl. ¶¶ 19–24.) Cortes identifies Mejia as an appropriate comparator. Although Mejia is Hispanic, Cortes plausibly alleges that PPD officers treated Cortes and Mejia differently even though they were alike in all relevant respects: they both participated in the same incident, were present at the scene, and "could have been prosecuted, but were not." *Lacey*, 693 F.3d at 920 (noting that the plaintiff "need only allege some facts, either anecdotal or statistical, demonstrating that similarly situated defendants . . . could have been prosecuted, but were not" (citation modified)). Thus, Cortes plausibly alleges discriminatory effect at the pleading stage.

Cortes also plausibly alleges discriminatory purpose. Cortes adequately alleges membership in a protected class by virtue of her race. (Compl. ¶¶ 38–45); *see Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race" as a characteristic protected by the Equal Protection Clause). Accepting her well-pleaded allegations as true, Cortes also plausibly alleges that PPD officers acted, at least in part, because of her race. *See Serrano*, 345 F.3d at 1082 (holding the plaintiff must demonstrate that the defendant acted, at least in part, because of the plaintiff's protected status). A plaintiff may establish discriminatory purpose by "producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022) (citation modified). Cortes alleges sufficient facts showing that PPD officers treated Cortes, a Black woman, differently than Mejia, who is not Black. For example, Cortes alleges that the responding PPD officer immediately perceived Cortes as the aggressor, punched her in the face, slammed her to the ground, and handcuffed her. (Compl. ¶¶ 19–20.) Further, despite eyewitness accounts that Cortes was the victim and that Mejia was the assailant, PPD officers did not detain Mejia. (*Id.* ¶¶ 21–23.) Thus, Cortes alleges sufficient facts supporting the inference that PPD officers

immediately identified the Black woman as the aggressor, disregarded eyewitness accounts contradicting that assumption, continued to detain Cortes despite evidence that she was the victim, and employed no comparable force against Mejia, the alleged assailant. (*Id.* ¶¶ 19–24, 39–42.) Drawing all inferences in Cortes's favor at the pleading stage, Cortes plausibly alleges that PPD officers acted, at least in part, because of her race. *Serrano*, 345 F.3d at 1082. Thus, the Court **DENIES** the City's Motion on this basis.

**B. Municipal Liability (Count 6)**

The City argues Cortes fails to plausibly allege municipal liability because she does not plead that a governmental policy, practice, or custom was the moving force behind the constitutional violation. (Mot. 8–11.) The City also contends that Cortes cannot show the City's failure to train its officers amounts to a deliberate indifference for Cortes's constitutional rights. (*Id.* at 12–13.) In her opposition brief, Cortes "concedes" that she insufficiently pleads her claim under a failure to train theory and "requests leave to amend to address this insufficiency." (Opp'n 10 n.3, Dkt. No. 20.)

As a general matter, municipal liability is not available in § 1983 actions under a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1987). Municipal liability attaches only when the execution of a governmental policy or custom inflicts the constitutional injury. *Id.* at 694. A plaintiff may prove municipal liability if she can show that (1) a city employee committed a constitutional violation pursuant to an official municipal policy or a longstanding practice or custom; (2) the city employee who committed the violation had final policymaking authority; or (3) an official with final policymaking authority ratified a subordinate's unconstitutional action. *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citation modified). "Liability for [an] improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Cortes fails to plausibly allege municipal liability under a practice or custom theory. To support her claim, Cortes cites prior incidents, lawsuits, settlements, and statistical evidence involving PPD officers, including allegations of excessive force, discriminatory policing, racial disparities, and retaliation against officers who reported misconduct. (Compl. ¶ 67.) But examples of prior incidents must be accompanied by facts connecting those prior incidents to the case at issue and "taking into account their similarity, their timing, and subsequent actions by the municipality." *J.M. by & Through Rodriguez v. County of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018). Cortes alleges no facts connecting the prior incidents to PPD officers' actions in this case. (*See generally* Compl.) Moreover, the statistics and prior incidents Cortes cites concern different categories of police activity than those she alleges in her Complaint, and Cortes fails to explain how those different categories amount to an alleged practice or custom here. For example, Cortes cites racial disparities involving traffic stops, youth arrests, discriminatory policing, and use of deadly force. (*Id.* ¶ 67(c)–(g).) Cortes also cites prior incidents of excessive force, some of which occurred decades earlier, (*id.* ¶ 67(h)–(t)), but fails to explain how the timing of those incidents, their factual similarity, and the City's response support a plausible inference that the City maintained a longstanding municipal practice or custom that caused Cortes's injury. *Est. of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1211 (E.D. Cal. 2019) (dismissing municipal liability claim where the plaintiffs cited prior incidents but failed to connect them to the plaintiffs' injury through allegations of factual and temporal proximity or the municipality's response). Thus, Cortes fails to plausibly allege municipal liability based on a City policy, practice, or custom theory.

Accordingly, the Court **GRANTS** the City's Motion and **DISMISSES** Cortes's municipal liability claim. As amendment may cure the deficiencies noted above, and because Cortes concedes she insufficiently pleaded her claim based on a failure to train theory and requests leave to amend, dismissal is **WITH LEAVE TO AMEND**.

**C. Bane Act Claim (Count 7)**

The City argues that Cortes fails to plead a Bane Act claim because she does not allege PPD officers acted with specific intent to violate her rights. (Mot. 13–14.)

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation modified). To prove a Bane Act claim, a plaintiff must establish: (1) an underlying constitutional violation, and (2) an officer's "specific intent to violate" the plaintiff's rights. *Id.* at 1044.

The City argues only that Cortes fails to show officers "acted with a specific intent" to violate her rights. (Mot. 13.) It contends Cortes "generally pleads that the PPD officers violated her rights without specific allegations describing how the PPD officers acted with the particular purpose to deprive [Cortes] of her rights." (*Id.*)

To establish "specific intent," a plaintiff must show that the defendant "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese*, 888 F.3d at 1045 (citation modified). But the plaintiff need not prove the defendant was "thinking in constitutional or *legal terms* at the time of the incident[]"; "reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.*

Cortes plausibly alleges that PPD officers acted with the specific intent required to state a Bane Act claim at the pleading stage. She alleges that the responding PPD officer arrived at the scene after Cortes called 911 for assistance, violently punched Cortes in the face, slammed her to the ground, and handcuffed her. (Compl. ¶¶ 12, 14, 19–20.) Despite multiple eyewitnesses informing the PPD officer that Cortes was the victim and Mejia was the assailant, the officer detained Cortes for approximately thirty minutes but did not immediately detain Mejia. (*Id.* ¶¶ 21–22.) Moreover, even after the scene had seemingly stabilized, the PPD officers refused to adjust Cortes's handcuffs despite Cortes telling them the handcuffs were causing her pain and denied

Cortes's repeated requests to clothe herself after Mejia disrobed her, leaving Cortes exposed in public. (*Id.* ¶¶ 23–24.) At the pleading stage, these allegations plausibly support the inference that PPD officers recklessly disregarded Cortes's constitutional rights and that their force was "more than necessary under the circumstances," thereby satisfying the specific intent requirement. *Reese*, 888 F.3d at 1045. Thus, the Court **DENIES** the City's Motion on this basis.

**D. Ralph Act Claim (Count 8)**

The City argues that Cortes fails to plead a Ralph Act claim because she does not allege that PPD officers acted because of Cortes's race. (Mot. 14–15.)

The Ralph Act provides that all persons "have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any [listed] characteristic." Cal. Civ. Code § 51.7(a). To state a Ralph Act claim, "a plaintiff must allege that (1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Rodriguez v. Orange County*, No. 23-cv-823-W-DDL, 2023 WL 6472000, at *6 (S.D. Cal. Oct. 4, 2023).

The City argues only that Cortes fails to allege sufficient facts to satisfy the second element of her claim because she cannot show that PPD officers' conduct "was motivated by [Cortes's] race." (Mot. 14.) As previously discussed, Cortes alleges sufficient facts showing that she, a Black woman, was treated differently by PPD officers than Mejia, who is not Black. Accepting the well-pleaded allegations as true, Cortes adequately alleges that PPD officers immediately identified the Black woman as the aggressor without factual support, disregarded witness accounts debunking that assumption, and employed no comparable force against Mejia, a non-Black woman and the alleged aggressor. (Compl. ¶¶ 19–24, 39–42.) Thus, Cortes's allegations are sufficient to support a plausible inference that PPD officers' actions were motivated

by their perception of Cortes's race and thus satisfy the second element of a claim under the Ralph Act at the pleading stage. *See Young v. County of San Diego*, No. 20-cv-02441-H-AHG, 2021 WL 1087102, at *7 (S.D. Cal. Mar. 22, 2021) (finding that the plaintiff satisfied this element because he pleaded sufficient facts showing the officer defendant treated him differently from his wife who was of a different race). Thus, the Court **DENIES** the City's Motion on this basis.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the City's Motion to Dismiss. (Dkt. No. 16.) The Court **GRANTS** the Motion and **DISMISSES** Cortes's claim for municipal liability (Count 6) **WITH LEAVE TO AMEND**. The Court **DENIES** the City's Motion in all other respects.

Cortes may amend to cure the deficiencies identified above. If she chooses to amend, she must do so within **twenty-one (21) days** of the date of this Order, in which case the City shall answer or otherwise respond within **fourteen (14) days** of the filing. If Cortes chooses not to amend, all claims dismissed with leave to amend shall be deemed dismissed with prejudice as of the lapse of the deadline to amend. In that event, the City shall answer within **fourteen (14) days** of the lapsed deadline.

**IT IS SO ORDERED.**

July 21, 2026

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**